PD-0057-15

PD-0057-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/21/2015 1:30:04 PM
Accepted 1/28/2015 9:14:37 AM
ABEL ACOSTA
CLERK

NO._____

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

## TOMMY SCOTT THOMAS,
APPELLANT

V.

THE STATE OF TEXAS,
APPELLEE

# APPELLANT'S
# PETITION FOR DISCRETIONARY REVIEW

NO. 06-14-00002-CR
COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
AT TEXARKANA

On appeal from Cause Number 41,489-B
In the 124th District Court of Gregg County, Texas
Honorable Alfonso Charles, Judge Presiding

FILED IN
COURT OF CRIMINAL APPEALS

January 28, 2015

ABEL ACOSTA, CLERK

Hough-Lewis ("Lew") Dunn
P.O. Box 2226
Longview, TX 75606
Tel. 903-757-6711
Fax 903-757-6712
Email: dunn@texramp.net
Texas State Bar No. 06244600
Attorney for Appellant

*APPELLANT RESPECTFULLY REQUESTS ORAL ARGUMENT*

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

In compliance with Rule 68.4, TEX. R. CIV. PRO., following are the identities of the trial court judge, all parties to the judgment appealed from, and the names and addresses of all trial and appellate counsel:

Parties

Tommy Scott Thomas, Appellant

The State of Texas, Appellee

Trial Court Judge

Hon. Alfonso Charles
Presiding Judge, 124th District Court
Gregg County, Texas

Trial and Appellate Counsel

David Moore
Gena Bunn
Clifton L. Holmes
Attorneys at Law
110 W. Methvin
Longview, TX 75601
Trial Counsel for Appellant

Christopher A. Parker
Taylor C. Paris
Assistant Criminal District Attorneys
101 E. Methvin, Suite 333
Longview, TX 75601
Trial Counsel for the State of Texas, Appellee

**IDENTITY OF JUDGE, PARTIES, AND COUNSEL (CONT'D)**

Benjamin L. Dower
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
Counsel at Pre-Trial Hearing for the State of Texas, Appellee

Hough-Lewis ("Lew") Dunn
Attorney at Law
P.O. Box 2226
Longview, TX75606
Counsel for Appellant on Appeal

Zan Colson Brown
Assistant Criminal District Attorney
101 E. Methvin, Suite 333
Longview, TX 75601
Appellate Counsel for the State of Texas, Appellee

# TABLE OF CONTENTS

PAGE

IDENTITY OF JUDGE, PARTIES AND COUNSEL ………….     ii

TABLE OF CONTENTS …………………………………….     iv

INDEX OF AUTHORITIES ………………………………….     vi

STATEMENT REGARDING ORAL ARGUMENT ……………     vii

STATEMENT OF THE CASE ……………………………….     1

STATEMENT OF PROCEDURAL HISTORY …………………     1

GROUND FOR REVIEW ………………………………….     2

DID THE COURT OF APPEALS APPLY THE CORRECT
STANDARD OF REVIEW FOUND IN *CARMOUCHE* IN
EVALUATING ABUSE OF DISCRETION BY THE TRIAL
COURT, WHEN A REASONABLE ALTERNATIVE
PERCEPTION OF THE VIDEO CONTROVERTS THE
FINDING OF THE TRIAL COURT FOR PROBABLE CAUSE
TO STOP?

REASONS FOR REVIEW ………………………………….     2

ARGUMENTS AND AUTHORITIES …………………………     2

PRAYER FOR RELIEF ……………………………………     7

CERTIFICATE OF SERVICE ……………………………….     7

CERTIFICATE OF COMPLIANCE ………………………….     8

**TABLE OF CONTENTS (CONT'D)**

APPENDIX

*Tommy Scott Thomas v. State*, Cause No. 06-14-00002-CR
(Tex. App. – Texarkana, delivered December 16, 2014)

# INDEX OF AUTHORITIES

CASES                                                          PAGE

*Carmouche v. State*,  10 S.W.3d 323 (Tex. Crim. App. 2000) ……   2, 4, 5, 6

*Garcia v. State*, 218 S.W.3d 756 ………………………………..   3
      (Tex. App. – Houston [1st Dist.] 2007, no pet.)

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ………..   4

*Hutchison v. State*, 424 S.W.3d 164 …………………………………   4
      (Tex. App. – Texarkana 2014, no pet.)

*Mapp v. Ohio*, 367 U.S. 643 (1961) …………………………………   3

*State v. Cantwell*, 85 S.W.3d 849 ………………………………...   3
      (Tex. App. – Waco 2002, pet. ref'd)

*State v. Johnson*, 336 S.W.3d 649 (Tex. Crim. App. 2011) ………   4

*Wilson v. State*, 311 S.W.3d 452 (Tex. Crim. App. 2010) …………   4

RULES AND STATUTORY PROVISIONS

Amend. IV, U. S. CONST. …………………………………………   3

Amend. XIV, U. S. CONST. ……………………………………….   3

Art. 1, Section 9, TEX. CONST. ………………………………..   3

Art. 1, Section 19, TEX. CONST. …………………………………   3

TEX. CODE CRIM. PRO. Art. 1.04 ………………………………   3

TEX. CODE CRIM. PRO. Art. 1.06 ………………………………   3

**INDEX OF AUTHORITIES (CONT'D)**

PAGE

TEX. CODE CRIM. PRO. Art. 38.23 …………………………… 3

TEX. PENAL CODE § 38.04 ………………………………….. 1

TEX. TRANSP. CODE § 543.001 ..………………………….. 3

TEX. TRANSP. CODE § 545.104(b) ………………………….. 2

TEX. R. APP. PRO. 66 …………………………………… 1

TEX. R. APP. PRO. 66.3(c) ……………………………… 2

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant has raised an important question and believes that oral argument would help clarify the issue presented in his petition for discretionary review. Therefore, he respectfully requests oral argument.

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

NOW COMES TOMMY SCOTT THOMAS, Appellant in this cause, by and through his attorney of record, Hough-Lewis ("Lew") Dunn, and, pursuant to the provisions of TEX. R. APP. PRO. 66, *et seq*, moves this Court to grant discretionary review, and in support will show as follows:

## STATEMENT OF THE CASE

Appellant was charged by indictment with evading arrest or detention in a motor vehicle, in violation of TEX. PENAL CODE § 38.04 (CR 4). He filed a "Motion to Declare Penal Code Section 38.04 Unconstitutional" (CR 35) and a "Motion to Quash the Indictment" on that basis (CR 24); however, both motions were denied after a pre-trial hearing (CR 66). After a bench trial Appellant was found guilty and, based upon enhancements proven at punishment, sentenced to a term of thirty (30) years in the Texas Department of Criminal Justice, coupled with a finding of the use of a deadly weapon (CR 101). Appellant timely perfected his appeal (CR 105).

## STATEMENT OF PROCEDURAL HISTORY

Appellant presented four (4) issues in his appellate brief. The conviction was affirmed in a memorandum opinion not designated for publication. *Tommy Scott Thomas v. State*, No. 06-14-00002-CR (Tex. App. − Texarkana, delivered

1

December 16, 2014). This petition is due to be filed on January 14, 2015, and, therefore, is timely filed.

**GROUND FOR REVIEW: DID THE COURT OF APPEALS APPLY THE CORRECT STANDARD OF REVIEW FOUND IN *CARMOUCHE* IN EVALUATING ABUSE OF DISCRETION BY THE TRIAL COURT, WHEN A REASONABLE ALTERNATIVE PERCEPTION OF THE VIDEO CONTROVERTS THE FINDING OF THE TRIAL COURT FOR PROBABLE CAUSE TO STOP?**

**REASONS FOR REVIEW: Review is proper pursuant to TEX. R. APP. PRO. 66.3 (c) because the Court of Appeals has rendered its decision in in a way that conflicts with a decision of this Court on the issue of video evidence, namely, *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000).**

## ARGUMENT AND AUTHORITIES

Late at night the State's witness, Officer Jacob Schroeder, saw what he perceived as Appellant's flat-bed truck fail to signal a left turn and, based upon that, chased and stopped Appellant (4 RR 16 ff). This implicated TEX. TRANSP. CODE § 545.104(b), which states that "an operator intending to turn a vehicle…signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." State's Exhibit No. 1, a video from the officer's patrol car, was admitted into evidence and played for the trial court (4 RR 18).

Prior to that testimony, Appellant's trial counsel objected to the evidence, moving for its suppression (4 RR 13). The trial court acknowledged the objection and stated that he would rule on the issue of probable cause at the conclusion of testimony (4 RR 13-14).

2

After hearing the evidence, the trial court found there was probable cause: "Based on the testimony of the officer and State's Exhibit 1, the video, the evidence shows the defendant at a stop sign – or at an intersection, and that, as the defendant begins his turn onto Highway 80, that is when he turn signal appears….That does and is a violation of the Traffic Code, and it does justify probable cause to initiate a traffic stop. So the Court will find that there was probable cause for the stop." (4 RR 83).

Probable cause to stop is viewed in the context of the Fourth Amendment and its Texas counterpart, that is, search and seizure are subject to the restrictions of Amend. IV and Amend. XIV, U. S. CONST., and Art. 1, Sections 9 and 19, TEX. CONST. *See also*, Art. 1.06 and 1.04, also Art. 38.23, TEX. CODE CRIM. PRO. *See, Mapp v. Ohio*, 367 U.S. 643 (1961); *State v. Cantwell*, 85 S.W.3d 849 (Tex. App. – Waco 2002, pet. ref'd).

It has been stated that a peace officer is authorized to arrest without a warrant a driver who violates the provisions of the Texas Transportation Code. Section 543.001, TEX. TRANS. CODE; *Garcia v. State*, 218 S.W.3d 756, 760 (Tex. App. – Houston [1st Dist.] 2007, no pet.).

The Court of Appeals reviewed the decision of the trial court under the bifurcated standard of review, deferring to the trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a

witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations, citing to *Wilson v. State*, 311 S.W.3d 452 (Tex. Crim. App. 2010), *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000), *Hutchison v. State*, 424 S.W.3d 164 (Tex. App. – Texarkana 2014, no pet.), *State v. Johnson*, 336 S.W.3d 649 (Tex. Crim. App. 2011), and *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) (*Thomas v. State*, Slip. Op., pp. 5-6).

The Court of Appeals stated, in relevant part: "Our independent review of the video recording also reveals (1) that the vehicle's brake lights were on as the vehicle approached the stop sign, (2) that there was no turn signal used as the vehicle approached the stop sign, (3) that the vehicle came to a complete stop at the stop sign, (4) that the vehicle began to make a left turn, and (5) that the turn signal was not engaged until the vehicle was already in the process of turning" (Slip Op., p.8).

Appellant, however, respectfully disagrees with the evaluation of the video made by the Court of Appeals. The problem with the analysis is that the flat-bed truck driven by Appellant is somewhat unusual in its configuration of rear lights, stop lamps, and turn indicators. On the right and left sides the same lights are used for all three functions, both at the top and bottom of the truck. In other words, the truck, when braked, will show a stronger red light than ordinarily seen at night

4

from the lamps, and then, if a turn signal is activated, that light will pulse between its heavier brightness (indicating a stop) and a lesser brightness.

*Carmouche v. State*, 10 S.W.3d at 332 provides guidance. There this Court reviewed the videotape of a search and ruled that the independent evidence of the videotape controverted the testimony of witnesses, providing "indisputable visual evidence" contradicting the testimony in the trial court.

The question is this: what is the rationale underlying *Carmouche*? Appellant suggests that it is the objective, rather than subjective, evidence given by video or photographic means. In evaluating evidence one must defer to objective evidence, free of subjective interpretation. That is the kind of evidence furnished by a videotape. No subjective filter is interposed between the facts and their ready observation by the trier of fact or the reviewing court The facts speak for themselves without an intermediary.

With that in mind, therefore, Appellant contends that the perceptions by a reviewing court should be guided by an objective rule, namely, that to conclude that a piece of evidence is dispositive in this sort of case, the standard should include: first, a review of all of the relevant facts; second, a critique of alternative interpretations; and third, an analysis as to why the conclusion reached is the only reasonable alternative. That is the rationale underlying *Carmouche*, an analysis not followed by the Court of Appeals. In the case at bar the Court of Appeals never

described the somewhat unique configuration of the brake-turn-nighttime lamps on the flatbed truck and their operations vis-a-vis each other. How could the Court of Appeals be certain, for instance, that it was not mistaking the "on and off" of brake lights for the actual pulsing of the turn indicator? That is, Appellant was indicating his turn; yet, because of the configuration of the lights, an alternative way of seeing the lights would be to conclude that it was the truck intermittently braking and not indicating a turn.

Because the Court of Appeals failed to analyze the stop under the rationale of *Carmouche*, Appellant requests that his petition for discretionary review should be granted.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court grant discretionary review, and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' Judgment and remand this cause to the trial court for a new trial.

Respectfully submitted,

/S/ Hough-Lewis Dunn
Hough-Lewis ("Lew") Dunn
P.O. Box 2226
Longview, TX 75606
Tel. 903-757-6711
Fax 903-757-6712
Email: dunn@texramp.net
Texas State Bar No. 06244600
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify, by affixing my signature above, that a true and correct copy of the foregoing *Petition for Discretionary Review*, was sent to the following person by certified mail, return receipt requested, on the 21st day of January, 2015, to Ms. Lisa C. McMinn, State Prosecuting Attorney, at P.O. Box 13046, Austin, TX 78711-3046 and also sent by electronic means to the email address: information@spa.texas.gov; also a true and correct copy was sent by first class mail to Ms. Zan Colson Brown, Assistant District Attorney, 101 E. Methvin, Suite

333, Longview, TX 75601 and also sent by electronic means to the email address: zan.brown@co.gregg.tx.us on the same date.

/S/ Hough-Lewis Dunn
Hough-Lewis Dunn

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with Rule 9, TEX. R. APP. PROC., regarding length of documents, in that exclusive of caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 1,601 words.

/S/ Hough-Lewis Dunn
Hough-Lewis Dunn

**APPENDIX**

*Tommy Scott Thomas v. State*, Cause No. 06-14-00002-CR
(Tex. App. – Texarkana, delivered December 16, 2014)



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00002-CR

_____

TOMMY SCOTT THOMAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 41489-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Following a bench trial, Tommy Scott Thomas was convicted of evading arrest or detention with a motor vehicle. After entering a finding of true to the State's enhancement allegations, the trial court sentenced Thomas to thirty years' imprisonment. On appeal, Thomas argues (1) that the trial court erred in overruling his motion to quash the indictment on the ground that the evading arrest statute is unconstitutional because it was enacted by a bill that violated the one-subject rule, (2) that the trial court erred in denying his motion to suppress evidence because the arresting officer illegally initiated a traffic stop, (3) that the trial court erred in finding that the Dodge flatbed pickup truck that he was driving was used as a deadly weapon, and (4) that there was a fatal variance between the alleged date of a previous conviction used for enhancement and the actual date of the previous conviction. Because we overrule all points raised by Thomas, we affirm the trial court's judgment.

## I.    The Trial Court Properly Denied Thomas' Motion to Quash the Indictment

Article III, Section 35 of the Texas Constitution states, "No bill . . . shall contain more than one subject." TEX. CONST. art. III, § 35(a). "The purpose of the single-subject rule is to prevent log-rolling—the inclusion in a bill of several subjects having no connection with each other in order to create a combination of various interests in support of the whole bill." *Ex parte Jones*, 410 S.W.3d 349, 351 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 440 S.W.3d 628 (Tex. Crim. App. 2014) (citing *LeCroy v. Hanlon*, 713 S.W.2d 335, 337 (Tex. 1986)). "A bill satisfies the rule, 'even if it contains numerous provisions, however diverse, as long as these

2

provisions relate directly or indirectly to the same general subject and have a mutual connection.'" *Id*. (quoting *LeCroy*, 713 S.W.2d at 337).

Evading arrest with a motor vehicle was previously classified as a state-jail felony, but became a third-degree felony following amendments to Section 38.04 of the Texas Penal Code, which were made by the Legislature in 2011 via Senate Bill 1416. *Compare* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2014) (punishing offense as third-degree felony), with Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, sec. 48.04(b), 2009 Tex. Gen. Laws 4385, 4385–86, *amended by* Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 3, sec. 38.04(b), 2011 Tex. Sess. Law Serv. 2321, 2322 (West) .

As initially drafted, Senate Bill 1416 was only designed to add tire-deflation devices to the list of prohibited weapons under Section 46.05 of the Texas Penal Code and made no mention of the evading arrest statute. *Jones*, 440 S.W.3d at 630 (citing TEX. PENAL CODE ANN. § 46.05 (West 2011)). Three months later, Senate Bill 1416 was amended to address the evading arrest statute. *Id.* As explained by *Jones*,

> At the time at which each legislative chamber voted for its enactment, Senate Bill 1416's title read, "An Act relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire deflation device; providing criminal penalties." H.J. of Tex., 82nd Leg., R.S. 4375 (2011); *see* S.J. of Tex., 82nd Leg., R.S. 4150–51 (2011). Although the caption did not mention evading arrest, identical bills were adopted and passed by the Texas House of Representatives and the Texas Senate, and the substance of those bills included elevating the penalty for evading arrest in a motor vehicle. *See* H.J. of Tex., 82nd Leg., R.S. 4316 (2011); S.J. of Tex., 82nd Leg., R.S. 4151 (2011) (passing bill). More specifically, as enrolled and enacted, Senate Bill 1416 included five sections that (1) amended Section 46.01 of the Texas Penal Code to provide a definition of what constitutes a tire-deflation device, (2) amended Section 46.05 of the Texas Penal Code to make a tire-deflation device a prohibited weapon, (3) amended Section 38.04 of the Texas Penal Code to elevate the punishment

3

range for first-time offenders evading arrest in a motor vehicle and to provide for penalties for offenses where a tire-deflation device is used while an actor is in flight, and (4) and (5) provided for an effective date of September 1, 2011.

*Id.* at 630–31 (footnote omitted).

On the basis that Senate Bill 1416 "criminalize[d] the possession . . . of tire-deflation devices on the once [sic] hand, yet, on the other hand, elevated the penalty for evading arrest in a vehicle," Thomas filed a motion to quash the indictment, arguing that Section 38.04 is unconstitutional because Senate Bill 1416 violated the one-subject rule. Following a hearing, the trial court denied Thomas' motion to quash, ruling that the statute was constitutional.

On appeal, Thomas argues that the trial court erred in this ruling. We conduct a de novo review of a trial court's denial of a motion to quash. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Our analysis is greatly simplified by the fact that the Texas Court of Criminal Appeals has already spoken on this very issue. In *Jones*, the court explained that Senate Bill 1416 has one subject—the "imposition of criminal penalties described in the Texas Penal Code for offenses involving motor vehicles." *Jones*, 440 S.W.3d at 632. Further, the court found that the provisions of Senate Bill 1416 also had "a mutual connection in that their enactment was intended to better protect law enforcement and the public from actors who evade arrest." *Id.* at 630.[1]

---

[1]The court reached that conclusion after discovering that (1) in the original bill analysis, the sponsoring author's statement of intent explained that, while pursuing suspects, law enforcement officers "'had to deal with the suspects throwing 'tire deflation devices' at [their] vehicles and then evading arrest as a result,'" (2) during the debate on amendments, Representative Allen Fletcher explained that the bill should be amended because "'[d]rug runners along the southern border have been deploying these tire deflation devices while being pursued by law enforcement. . . . [which] endanger everyone else on the roadway,'" and (3) a similar amendment was orally presented by Senator Juan Hinojosa and also accepted. *Jones*, 440 S.W.3d at 630, 632–33 (citing Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1416, 82d Leg., R.S. (2011); *Archived House Chamber Video, 82d Leg., R.S., May 19, 2011,*

The Texas Court of Criminal Appeals has already decided Thomas' first point of error against him.  Accordingly, we overrule it.

## II.        Thomas Was Lawfully Stopped

Thomas moved to suppress evidence obtained following the traffic stop that eventually led to his arrest on the ground that the arresting officer did not have reasonable suspicion to initiate the traffic stop.  A routine traffic stop—a seizure—implicates both the United States and Texas Constitutions and, under both, must be reasonable.  *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.  It is undisputed that the officer here did not have a warrant to stop Thomas.  Thus, the State was required to prove that the seizure was reasonable.  *See Delafuente v. State*, 414 S.W.3d 173, 176 (Tex. Crim. App. 2013).  The trial court found that the State met its burden, prompting this point of error on appeal.

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion and overturn that ruling only when it is so clearly wrong that it falls outside the zone of reasonable disagreement—that zone in which reasonable minds may disagree over what the ruling should be.  *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.).  "In reviewing such a ruling, we apply a bifurcated standard of review."  *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010) (citing *Carmouche v.*

*1:30 p.m. session at 06:08:20*, TEX. HOUSE REPRESENTATIVES, http://tlchouse.granicus.com/MediaPlayer.php?view_id=19&clip_id=4988; *Archived Senate Chamber Video, 82d Leg. R.S., May 27, 2011 Senate Session, Part II at 1:22:40*, TEX. SENATE, http://tlcsenate.granicus.com/MediaPlayer.php?view_id=12&clip_id=1728).

*State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). "We approach our review with two standards, 'giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations.'" *Hutchinson*, 424 S.W.3d at 175 (quoting *Martinez*, 348 S.W.3d at 922–93); *see State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Wilson*, 311 S.W.3d at 458; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

At a suppression hearing, the trial court is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. A trial court's ruling on a motion to suppress will be affirmed if it "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (per curiam).

Law enforcement officers may stop and briefly detain individuals suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To make an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "This is an objective

6

standard that disregards any subjective intent of the officer making the stop . . . ." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The facts used to support the investigative stop must support more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos*, 15 S.W.3d at 151; *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005).

At Thomas' suppression hearing, Jacob Schroeder, a patrol officer for the White Oak Police Department, testified that he initiated a traffic stop at 2:27 a.m. after he observed the white Dodge flatbed pickup truck driven by Thomas turn without using a signal.

Thomas admits that turning without properly signaling is a violation of Section 545.104 of the Texas Transportation Code and that a police officer is authorized to initiate a traffic stop upon observing such a violation. *See* TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011). However, he argues (1) that Section 545.104 only requires that "[a]n operator intending to turn a vehicle . . . signal continuously for not less than the last 100 feet of movement of the vehicle before the turn" and (2) that the dashcam video recording of the stop demonstrated that Thomas did activate his turn signal as required. *Id.*

The trial court disagreed with Thomas' assessment of Schroeder's dashcam video recording, ruling in the following manner:

> The first issue the Court has to address is whether there was probable cause to attempt to initiate a traffic stop in this case. Based on the testimony of the officer and State's Exhibit 1, the video, the evidence shows the defendant at a stop sign -- or at an intersection, and that, as the defendant begins his turn onto Highway 80, that is when his turn signal appears. Also, through the officer's testimony, that's when it first appeared. That does and is a violation of the Traffic Code, and it

7

does justify probable cause to initiate a traffic stop. So the Court will find that there was probable cause for the stop.

Our independent review of the video recording also reveals (1) that the vehicle's brake lights were on as the vehicle approached the stop sign, (2) that there was no turn signal used as the vehicle approached the stop sign, (3) that the vehicle came to a complete stop at the stop sign, (4) that the vehicle began to make a left turn, and (5) that the turn signal was not engaged until the vehicle was already in the process of turning.

In sum, the video recording supports the trial court's factual determination that Thomas failed to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b). Therefore, the trial court's ruling that Schroeder had a reasonable basis for suspecting that Thomas had committed a traffic offense was supported by the record. Accordingly, we overrule Thomas' second point of error.

### III. The Trial Court's Finding that the Truck Was Used as a Deadly Weapon Is Supported by the Record

"A deadly weapon is anything that 'in the manner of its use or intended use is capable of causing death or serious bodily injury.'" *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (quoting TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2011)). Thomas argues that the evidence was legally insufficient to prove that the truck was used as a deadly weapon.

"The inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution." *Id.* (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Jackson v.*

8

*Virginia*, 443 U.S. 307, 318–19 (1979)). "Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense." *Id.* (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)). "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Id.* (citing *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (per curiam)). "Specific intent to use a motor vehicle as a deadly weapon is not required." *Id.* (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995)).

"To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon, . . . (2) the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained[,] and (3) that other people were put in actual danger." *Id.* (citation omitted) (quoting *Ex parte Jones*, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997)). Here, Thomas challenges the third factor.

After Schroeder activated his patrol car lights to initiate the traffic stop of Thomas' vehicle, Thomas fled, leading to a lengthy and dangerous chase to apprehend him. The video from Schroeder's dashcam shows that Thomas committed traffic violations too numerous to count during the lengthy chase. According to Schroeder, Thomas sped during most of the chase, travelling "at least 60 miles an hour" through a thirty-five-mile-per-hour zone and reaching a top speed of eighty miles per hour on the highway. Much of the travelled roadway was a narrow, winding, two-lane highway. The dashcam video also shows that, while speeding to evade arrest,

9

Thomas switched lanes numerous times without signaling, blazed through stop signs at intersections in residential areas without stopping, wove within his lane of travel, continuously crossed into and drove a considerable distance in the opposite lane of travel, and drove several times with his vehicle in both the southbound and northbound lanes of travel. During one of the many times Thomas chose to drive in the wrong lane, flagrantly disregarding traffic laws and the inherent dangers of his actions, Thomas encountered oncoming traffic and barely avoided a head-on collision.

The dashcam video of the near miss showed that Thomas' vehicle was completely in the oncoming lane of travel when the headlights of an oncoming car became visible. Thomas maneuvered over to the correct lane to avoid the accident just as the oncoming car slammed on its brakes. Although the video recording demonstrated that Thomas was in the correct lane when the oncoming car passed, it also shows that the car veered onto the shoulder to avoid the collision and that the car's right tires were still on the shoulder when Schroeder passed. Even after this near miss, Thomas continued to speed off. After several more minutes, Thomas crossed over the oncoming lane of travel, drove through a ditch, ran the truck into a tree, exited the truck, and continued evading on foot. The chase ended when Schroeder ran after Thomas, caught up to him, tased him, and placed him under arrest.

10

Based on the near-miss, the trial court found that the truck was used as a deadly weapon.[2] On appeal, Thomas argues that this finding was in error because there was no accident and because it was unclear from the dashcam video recording whether the car actually swerved to avoid Thomas.[3] In establishing that a vehicle is a deadly weapon, it is not necessary that the evidence prove that another motorist swerved to avoid a collision with the defendant's vehicle. *See Drichas*, 175 S.W.3d at 798 n.6.

---

[2]The trial court's finding reads as follows:

> [T]he Court can see and the video shows the defendant drive on the wrong side of the road on a two-lane, winding road; that there was oncoming traffic in that -- on that road; that that vehicle is coming the other direction.
>
> The defendant is driving in the wrong lane, and is driving in the wrong lane when you can see the headlights of the other vehicle approaching, and is only about four to five seconds away before the defendant's vehicle gets back into his correct lane of traffic. The video also shows that vehicle having had to move to the side of the road. The vehicle was still moving even when the officer passes it.
>
> . . . .
>
> I believe, by beyond a reasonable doubt, the State has proven its allegation of a deadly weapon, and I will make an affirmative finding of a deadly weapon.

[3]Thomas also argues that, because (1) "the video actually shows that the other car did not go off the road to avoid Appellant, but passed him in its own lane of travel, at which time Appellant was in his lane of travel," and because (2) "the other vehicle then, about one and half to two seconds <u>after</u> passing Appellant, moved to that driver's right, placing its right wheels off the pavement," (3) "one can conclude from the video that the other car left the road not because of the actions of Appellant but in order to defer to the officer who was giving chase." This argument questions the province of the fact-finder.

11

As explained in *Drichas*, although

> the danger posed to motorists must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding. . . . The statute specifically pertains to motor vehicles, so a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner.

*Id.* at 799 (citations omitted).

Here, the danger was actual—not theoretical. Schroeder's testimony and the dashcam video from his patrol car demonstrate that another vehicle was on the roadway at the same time and place as Thomas while Thomas was driving in a dangerous manner. Therefore, viewing the evidence in a light most favorable to the prosecution, we find it legally sufficient to support the trial court's finding that Thomas' truck was used as a deadly weapon. We overrule Thomas' third point of error.

## IV. There Was No Fatal Variance with Respect to the Enhancement Allegation

Pursuant to a plea of guilty, Thomas was convicted of possession of a controlled substance on November 3, 1988. Thomas received a suspended sentence of ten years' imprisonment and was placed on ten years' probation. On February 27, 1991, the trial court revoked Thomas' probation, sentenced him to ten years' confinement, and ordered him to pay a $1,000.00 fine. In its indictment, the State alleged that Thomas "was finally convicted" of the

12

felony offense of possession of a controlled substance "on the 28th day of February, 1991, in Cause Number 9977 in the 115th District Court of Upshur County, Texas."[4]

First, Thomas argues that there is a fatal variance between the indictment and the proof at trial because the actual date of the underlying conviction was November 3, 1988. While it is generally true that a conviction resulting in a probated sentence is still a conviction, "'[i]t is well-settled that a probated sentence is not a final conviction for enhancement purposes unless it is revoked.'" *Ex parte White*, 211 S.W.3d 316, 319 (Tex. Crim. App. 2007) (quoting *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992)). This is true because successful completion of probation/community supervision renders that conviction unavailable for use in enhancement. *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). Thus, the State's allegation that Thomas "was finally convicted" on the date that his probation was revoked is correct. *See id.*; *Williams v. State*, 356 S.W.3d 508, 516–17 (Tex. App.—Texarkana 2011, pet. ref'd); *see also Perry v. State*, No. 06-08-00039-CR, 2009 WL 1138812, at *7 (Tex. App.—Texarkana Apr. 29, 2009, pet. ref'd) (mem. op., not designated for publication).[5]

Yet, Thomas argues that the indictment lists the date of the judgment revoking probation as February 28, 1991, whereas the judgment shows that the revocation was entered on February 27, 1991. "It is well settled that it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the

---

[4]The State also alleged that Thomas was finally convicted of the felony offense of possession of a controlled substance with intent to deliver "on the 4th day of January, 2002, in Cause Number 3572 in the 8th District Court of Rains County, Texas."

[5]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

13

primary offense." *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). Variances of the type raised by Thomas are not fatal unless they has misled him to his prejudice. *Id.*; *Thompson v. State*, 563 S.W.2d 247, 251 (Tex. Crim. App. [Panel Op.] 1978); *see Dominguez v. State*, No. 07-02-0264-CR, 2003 WL 834778, at *1 (Tex. App.—Amarillo Mar. 4, 2003, pet. ref'd) (mem. op., not designated for publication) (holding immaterial a one-day variance between date of final conviction as alleged in indictment and as proved at trial). Here, Thomas neither contends nor illustrates that he was misled to his prejudice in any way by the variance. Thus, the variance is not fatal. Accordingly, we overrule Thomas' last point of error.

## V.     Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:      November 20, 2014
Date Decided:        December 16, 2014

Do Not Publish

14