

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1158-13

**EX PARTE RICHARD DEWAYNE JONES, Appellant**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### GALVESTON COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ., joined. PRICE and KEASLER, JJ., concurred. MEYERS, J., dissented.

### O P I N I O N

In this case, we are asked to decide whether an amendment to the evading-arrest statute in the Texas Penal Code was enacted in violation of the "single-subject rule" of the Texas Constitution, thereby rendering that enactment void. Concluding that it was not, we determine that the court of appeals properly upheld the trial court's denial of the pre-trial application for a writ of habeas corpus filed by Richard Dewayne Jones, appellant, in which he alleged a violation of the single-subject rule after being indicted for evading arrest with

a motor vehicle. *See Ex parte Jones*, 410 S.W.3d 349, 353 (Tex. App.—Houston [14th Dist.] 2013) (op. on reh'g). Specifically, in his application, appellant alleges that the amendment to the evading-arrest statute that became effective on September 1, 2011, is facially unconstitutional because it was enacted in violation of Section 35 of the Texas Constitution, which states, "No bill . . . shall contain more than one subject." *See* TEX. CONST. art. III, § 35(a)[1]; TEX. PENAL CODE § 38.04(b)(2)(A).[2] Appellant challenges the validity of a provision within that amendment that elevated the range of punishment for first-time offenders who commit the offense of evading arrest with a motor vehicle. *Compare* TEX. PENAL CODE § 38.04(b)(2)(A) (punishing offense as third-degree felony), *with* Act of June 19, 2009, 81st Leg., R.S., ch. 1400, 2009 Tex. Gen. Laws 4385, 4386, *amended by* Act of June 17, 2011,

---

[1] After a 1986 constitutional amendment, Section 35 of the Texas Constitution now provides that

(a) No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject.
(b) The rules of procedure of each house shall require that the subject of each bill be expressed in its title in a manner that gives the legislature and the public reasonable notice of that subject. The legislature is solely responsible for determining compliance with the rule.
(c) A law, including a law enacted before the effective date of this subsection, may not be held void on the basis of an insufficient title.

TEX. CONST. art. III, § 35. The constitutional amendment (1) added subsections (b) and (c) to the section, (2) removed the words "which shall be expressed in its title" where they had appeared after the word "subject" in subsection (a), and (3) removed the phrase, "But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed." *See id*. § 35 (amended 1984).

[2] We note that recent amendments not relevant to this case have been made to Section 38.04. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 161, art. 22, § 22.001(38), 2013 Tex. Gen. Laws 622, 703 (amending TEX. PENAL CODE § 38.04(b)(2)(C) as amended by H.B. 496).

82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Gen. Laws 2321, 2322 (punishing offense as state-jail felony). Thus, if appellant is incorrect in his constitutional challenge, then the amendment is valid and his offense is punishable as a third-degree felony, but if he is correct, then his offense is punishable as a state-jail felony. *See* TEX. PENAL CODE § 38.04(b)(2)(A). We conclude that this bill, which provides for criminal penalties for offenses related to motor vehicles for the purpose of better protecting law enforcement and the public from actors who evade arrest, does not violate the single-subject requirement. We affirm the judgment of the court of appeals.

## I. Background

As initially drafted in March 2011, Senate Bill 1416 added tire-deflation devices to the list of prohibited weapons in Section 46.05 of the Texas Penal Code in order to address the problems caused by their use in evading arrest and the resulting threat to the safety of law enforcement and the general public. *See* TEX. PENAL CODE §§ 46.01 (defining prohibited weapons), 46.05 (penalizing unlawful weapon possession). The sponsoring author's statement of intent read,

> Recently, law enforcement officials in South Texas, when in pursuit of suspects, have had to deal with the suspects throwing "tire deflation devices" at law enforcement officials' vehicles and then evading arrest as a result. These home-made tire spikes are a threat to law enforcement and the general public, but the possession of such devices is currently not against the law.

Senate Research Center, Bill Analysis, Tex. S.B. 1416, at 1, 82nd Leg., R.S. (Mar. 25, 2011). The bill did not mention making any revisions to Penal Code Section 38.04, the evading-

arrest statute. *See* TEX. PENAL CODE § 38.04.

About three months later, the bill was amended during floor debate in the Texas House of Representatives. Representative Allen Fletcher proposed an amendment to the bill that was accepted. He stated,

> Drug runners along the southern border have been deploying these tire deflation devices while being pursued by law enforcement. The DPS has seen injuries to officers and damages to their vehicles because of these devices. These devices endanger everyone else on the roadway. The amendment adds the use of tire deflation devices against the pursuing officer as a felony of the third degree. [The amendment is] accepted by the author.

Texas House of Representatives Chamber Video, *House Chamber Session-May 19th, 2011*, (May 19, 2011, 1:30 p.m. session, at 6:08:20) (House vote) available at http://www.house.state.tx.us/video-audio/chamber/82/. A similar amendment was orally presented by Senator Juan Hinojosa and also accepted. Texas Senate Chamber Video, *Senate Session (Part II)-May 27th, 2011* (May 27, 2011, Part II session, at 1:22:40) (Senate vote) available at http://www.senate.state.tx.us/avarchive/?yr=2011&mo=05.

At the time at which each legislative chamber voted for its enactment, Senate Bill 1416's title read, "An Act relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire deflation device; providing criminal penalties." H.J. of Tex., 82nd Leg., R.S. 4375 (2011); *see* S.J. of Tex., 82nd Leg., R.S. 4150–51 (2011). Although the caption did not mention evading arrest, identical bills were adopted and passed by the Texas House of Representatives and the Texas Senate, and the substance of those bills included elevating the penalty for evading arrest in a motor vehicle. *See* H.J. of Tex., 82nd

Leg., R.S. 4316 (2011); S.J. of Tex., 82nd Leg., R.S. 4151 (2011) (passing bill).[3] More specifically, as enrolled and enacted, Senate Bill 1416 included five sections that (1) amended Section 46.01 of the Texas Penal Code to provide a definition of what constitutes a tire-deflation device, (2) amended Section 46.05 of the Texas Penal Code to make a tire-

---

[3] As enacted, Senate Bill 1416 in relevant part stated,

AN ACT

relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire deflation device and to the offense of attempting to evade arrest through the use of a vehicle or a tire deflation device; providing criminal penalties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
SECTION 1. Section 46.01, Penal Code, is amended by adding Subdivision (17) to read as follows:
(17) "Tire deflation device" means a device, including a caltrop or spike strip, that, when driven over, impedes or stops the movement of a wheeled vehicle by puncturing one or more of the vehicle's tires. . . .
SECTION 2. Subsections (a), (d), and (e), Section 46.05, Penal Code, are amended to read as follows:
(a) A person commits an offense if the person [he] intentionally or knowingly possesses, manufactures, transports, repairs, or sells: . . .
(10) a tire deflation device. . . .
SECTION 3. Subsections (b) and (c), Section 38.04, Penal Code, are amended to read as follows:
(b) An offense under this section is a Class A misdemeanor, except that the offense is: . . .
(2) a felony of the third degree if:
(A) the actor uses a vehicle while the actor is in flight [and the actor has been previously convicted under this section]; [or]
. . . .; or
(C) the actor uses a tire deflation device against the officer while the actor is in flight; or
(3) a felony of the second degree if: . . . .; or
(B) another suffers serious bodily injury as a direct result of the actor's use of a tire deflation device while the actor is in flight. . . .
Enrolled Version of Senate Bill 1416, available at http://www.capitol.state.tx.us/tlodocs/82R/billtext/pdf/SB01416F.pdf.

deflation device a prohibited weapon, (3) amended Section 38.04 of the Texas Penal Code to elevate the punishment range for first-time offenders evading arrest in a motor vehicle and to provide for penalties for offenses where a tire-deflation device is used while an actor is in flight, and (4) and (5) provided for an effective date of September 1, 2011. Subsequent to the adoption of the bill by the Legislature, the caption was made to conform to the substance of the bill that was passed; the caption specifically mentioned penalties for evading arrest in a motor vehicle.

After appellant filed his application for a pretrial writ of habeas corpus, the trial court held a hearing and denied it. In a substitute opinion on rehearing, the court of appeals affirmed the trial court's judgment. *See Jones*, 410 S.W.3d at 353. The court recognized that "the enacted version of SB 1416 did not pertain solely to criminalizing possession of tire deflation devices[,]" which had been the subject of the initial version, but held that "liberally construing the bill in favor of constitutionality, . . . the overarching subject of the bill was criminal offenses related to vehicles." *Id*. The court explained that the "common theme" of the topics in the introduced and enacted versions "is criminal behavior related to vehicles—behavior that has recently become more problematic in South Texas." *Id*. The court held that the provisions of Senate Bill 1416 "relate directly or indirectly to the same general subject and have a mutual connection." *Id*. (citations and quotation marks omitted).

In his sole ground in his petition for discretionary review, appellant argues that the "court of appeals erred in finding that [Senate Bill] 1416, which amended Penal Code

Section 38.04(b), did not violate the 'Single Subject' provision of the Texas Constitution."

He asserts that this Court should adopt a "germaneness" test to determine whether the single-subject rule has been violated, and that the bill's legislative record shows that "log rolling" occurred.[4]  This Court has also received an amicus curiae brief filed by the Texas Criminal Defense Lawyers Association that largely re-urged appellant's arguments.

## II.  Senate Bill 1416 Has a Single Subject

For a bill to be considered as having a single subject, the provisions must relate, directly or indirectly, to the same general subject and have a mutual connection.  *LeCroy v. Hanlon*, 713 S.W.2d 335, 337 (Tex. 1986) (single-subject rule met "even if it contains numerous provisions, however diverse, as long as these provisions relate directly or indirectly to the same general subject and have a mutual connection").  Texas courts have formulated slightly differently worded variants on the test for determining whether a bill has a single subject, but all similarly focus on the logical relationship between the provisions and the general subject.  *See, e.g., Ex parte Jimenez*, 317 S.W.2d 189, 194 (Tex. 1958) (bill will be

---

[4]     As one commentator explained following the 1986 amendment of Section 35,

> The single-subject rule is one well known to state legislators across the country. Its general purpose is to assure a unity of theme or purpose of a given bill. It discourages logrolling, whereby support for the bill is obtained by combining several unrelated but attractive subjects. The Texas courts have interpreted the rule liberally and have found violations in very few cases.

JANICE C. MAY, THE TEXAS STATE CONSTITUTION: A REFERENCE GUIDE 104 (1st ed. 1996).  *See also LeCroy v. Hanlon*, 713 S.W.2d 335, 337 (Tex. 1986) (explaining that logrolling is "the inclusion in a bill of several subjects having *no* connection with each other in order to create a combination of various interests in support of the whole bill") (emphasis added).

upheld on single-subject rule "if [a provision] has any logical relationship to the general subject"); *Dellinger v. State*, 28 S.W.2d 537, 539 (Tex. Crim. App. 1930) ("A liberal construction will be applied in determining whether or not a statute violates Section 35 . . . and, where the provisions are germane in any degree, the law will be upheld."). In deciding whether a bill has a single subject, as explained more fully below, it is no longer necessary to decide that the provisions in the bill are not foreign to the subject expressed in the title.

**A. The Provisions Have the Same General Subject and a Mutual Connection**

The provisions in the bill have the same general subject: imposition of criminal penalties described in the Texas Penal Code for offenses involving motor vehicles. Furthermore, the provisions of the bill also have a mutual connection in that their enactment was intended to better protect law enforcement and the public from actors who evade arrest. In the original bill analysis, the sponsoring author's statement of intent explained that while pursuing suspects, law-enforcement officers "had to deal with the suspects throwing 'tire deflation devices' at [their] vehicles and then evading arrest as a result." Senate Research Center, Bill Analysis, Tex. S.B. 1416, at 1, 82nd Leg., R.S. (Mar. 25, 2011). The bill's author observed that this was a "threat to law enforcement and the general public." *Id*. To address this problem, the bill as originally proposed provided for penalties for the possession of tire-deflation devices that, as defined, are used to impede or stop "the movement of a wheeled vehicle by puncturing one or more of the vehicle's tires." TEX. PENAL CODE § 46.01(17). The version of the bill enacted into law also provided for penalties for the use of

these devices while the actor is in flight during an evasion of arrest. Similarly, the elevated punishment range for evading arrest with a motor vehicle applies to the offense while the actor is in flight in a motor vehicle.

In applying the test to determine whether a particular enactment violates the single-subject rule, a reviewing court initially presumes the validity of the challenged statute and places the burden of proof on the statute's challenger. *LeCroy*, 713 S.W.2d at 337; *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974). The court also liberally construes both the constitutional provision and the questioned statute in favor of constitutionality. *LeCroy*, 713 S.W.2d at 337; *Robinson*, 507 S.W.2d at 524. Viewing Senate Bill 1416 in favor of finding it constitutionally compliant, we conclude that, because the penalties for the offenses described in the bill pertain to criminal offenses related to motor vehicles, they have a single subject, and because each of these offenses relates directly or indirectly to the offense of evading arrest, they have a mutual connection to one another. *LeCroy*, 713 S.W.2d at 337 (holding that Omnibus Fee Bill, a law containing eighty-nine substantive sections covering widely varying areas of law did not violate the single-subject rule because provisions all related directly or indirectly to same general subject: the imposition and collection of fees); *Jimenez*, 317 S.W.2d at 194 ("Since the legislature undoubtedly has as much power to enact a code as it does a single law of narrowest scope, and since any sort of 'code' necessarily involves many different kinds of individual provisions, none of these latter will violate the 'one subject' restriction, if it has any logical relationship to the general subject."); *Cover v.*

*State*, 913 S.W.2d 611, 615 (Tex. App.—Tyler 1995, pet. ref'd) ("The Texas Penal Code does address various subject matters, but that does not necessarily mean that the Texas Penal Code is unconstitutionally multifarious.").[5]

The thrust of appellant's primary complaint does not appear to be that there was an absence of a general subject or mutual connection, but rather that the purpose of the single-subject rule, to prevent log-rolling, was undermined in this case. Without citing to any

---

[5]     *See also Castellano v. State*, 458 S.W.2d 73, 75 (Tex. Crim. App. 1970) (holding that arms statute has only one subject even though "different arms are named and certain penalties prescribed therefor"); *King v. State*, 312 S.W.2d 501, 504 (Tex. Crim. App. 1958) (holding statute that regulates and controls barbiturates does not violate single-subject rule merely because "there are various types of compounds prepared which contain barbituric acid"); *McCarthy v. State*, 218 S.W.2d 190, 192 (Tex. Crim. App. 1949) (stating that three articles embodied in one bill "all relate to the same subject matter, namely, drunken driving" and thus do not violate single-subject rule); *Ruedas v. State*, 158 S.W.2d 500, 502 (Tex. Crim. App. 1942) (stating that even though "the Legislature subdivided the subject [of bill regulating operation of motor vehicles on public roadways] into three articles and prescribed certain penalties for acts committed in violation of each," bill "deals only with one subject"); *Dellinger v. State*, 28 S.W.2d 537, 539 (Tex. Crim. App. 1930) (holding an act prohibiting commission of certain acts while offenders are masked not unconstitutional as containing more than one "subject"); *Cliff v. State*, 261 S.W. 144, 144 (Tex. Crim. App. 1923) (stating bill that amended both procedural and penal codes is not open to single-subject-rule objection since bill's "entire subject-matter related to amending the law relative to intoxicating liquors"); *Mosier v. State*, 234 S.W. 225, 226 (Tex. Crim. App. 1921) (noting that bill meant "to regulate the use and operation of automobiles on the public highways" does not embrace more than one subject); *Davis v. State*, 225 S.W. 532, 534–35 (Tex. Crim. App. 1920) (holding law that "defined pool halls as being those places where pool and billiard tables were exhibited" did not violate Section 35); *Ex parte White*, 198 S.W. 583, 589 (Tex. Crim. App. 1915) (holding that an act that regulated both ginning and warehousing of cotton did not have more than one subject); *Ex parte Flake*, 149 S.W. 146, 148 (Tex. Crim. App. 1911) (holding law that provides for both regulation and prohibition of liquor traffic in prohibition territory "embraces but one subject, object, and purpose—the regulation and prohibition of the liquor traffic in territory where it has been prohibited"); *Watts v. State*, 135 S.W. 585, 585 (Tex. Crim. App. 1911) (holding that election law with various provisions had only one subject). *But see Ex parte Wynn*, 259 S.W.2d 191, 192 (Tex. Crim. App. 1953) (holding theft statute specifying that "offense [is] a felony or a misdemeanor" combines incongruous punishment subjects because offense "must be either one or the other"); *Redding v. State*, 6 S.W.2d 360, 361 (Tex. Crim. App. 1928) (same).

judicial authority, appellant suggests five factors to "focus[] on the likelihood that the statute[] as passed was a product of improper log-rolling." Appellant's five proposals lack persuasive value. His first proposal would limit our consideration to the original subject in the bill, but that misconstrues the plain language in the Texas Constitution, which requires only that "[n]o bill (except general appropriation bills, . . . ) shall contain more than one subject." TEX. CONST. art. III, § 35(a). The Constitution does not restrict our consideration of the subject of the bill only to its initial enactment, and doing so would make little sense in light of the amendments to bills that often occur during the legislative process. *See id*. Appellant's second and fifth proposed suggestions, regarding whether the provisions would have passed as stand-alone bills and would have been handled differently if they had occurred earlier in the legislative session, would require this Court to speculate about what would have been in the minds of legislators had the circumstances been entirely different, a matter that, for this Court, would be impossible to determine and unadvisable. Appellant's third proposal, focusing on whether the legislative history denotes that the Legislature was aware of the full extent of the subject matter of the legislation at issue at the time of passage, suggests focusing on the actual caption of the act "at passage" and whether any discussion of the bill referred to the elevated punishment range for evading arrest.[6] But this would ignore the fact that the legislators have before them the entire bill when they vote to adopt

---

[6]    Appellant includes an affidavit of Texas Representative Craig Eiland expressing his opinion that the single-subject rule was violated in this case. Because the affidavit was never presented to the trial court or court of appeals, we do not consider it for any purpose. *See* TEX. R. APP. P. 33.1.

it and would convert the analysis from one that addresses whether the bill had a single subject to an improper judicial focus on whether the title of the bill was accurate, which is a matter for the Legislature alone to police. *See id*. § 35(b), (c). In any event, appellant has failed to establish "log rolling" or that the bill had "several subjects having no connection with each other in order to create a combination of various interests in support of the whole bill." *See LeCroy*, 713 S.W.2d at 337. As explained above, the bill had a single subject that provided for criminal penalties for offenses related to motor vehicles to better protect law enforcement and the public from actors who evade arrest. Lastly, appellant's fourth proposal is merely an argument that a bill that affects "two different penal code sections" means that it is "encompassing two different subjects," a conclusion that we have already determined is incorrect, given the wide latitude afforded to the Legislature under the *LeCroy* test. *See id*. We are unpersuaded that any of appellant's proposals would be a proper basis for finding that the single-subject rule was violated in this case.

**B. Judicial Consideration of the Title of the Bill Has a Limited Purpose After the 1986 Constitutional Amendment**

Because appellant argues that this Court should consider the title of the bill in assessing whether the single-subject rule has been violated, we address the difference between a title or caption requirement as compared to a single-subject requirement. As interpreted through their respective constitutional provisions, the title and subject requirements serve different purposes. "The purpose of the unity of subject requirement is to prevent log-rolling," while "[t]he caption requirement's purpose is to give notice of the

title of the bill, not only to members of the legislature, but to the citizens at large[.]" *LeCroy*, 713 S.W.2d at 337 (quotation marks omitted). The Texas Constitution dictates that no law may be held void on the basis of an insufficient title. *See* TEX. CONST. art. III, § 35(c). The 1986 constitutional amendment to Section 35 retained the notice requirement, but placed the responsibility for its execution solely in the hands of the Legislature. *See id.* § 35 (b), (c). As this Court and the Texas Supreme Court observed following the constitutional amendment, courts "no longer ha[ve] the power to declare an act of the legislature unconstitutional due to the insufficiency of its caption." *Baggett v. State*, 722 S.W.2d 700, 702 (Tex. Crim. App. 1987); *see also Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000). Thus, after the amendment, we examine the title of a bill for the limited purpose of considering whether it sheds any light on the general subject of a bill, while remaining mindful that we are reviewing only the bill's subject for constitutional compliance and not the sufficiency of the bill's title.

In *Robinson v. Hill,* the Texas Supreme Court required the provisions of a bill to not be "foreign to the subject expressed in the title," but it did so while discussing whether a bill was constitutionally compliant under both the caption and single-subject requirements. *Robinson*, 507 S.W.2d at 524–25. In *Robinson*, the court stated, "The statute will not be held unconstitutional where its provisions relate, directly or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title." *Id*. *Robinson* was decided before the 1986 constitutional amendment at a point in time when the

judicial branch could declare a bill unconstitutional because the caption did not properly express the subject of a bill.[7] *See id*. Neither the Texas Supreme Court nor this Court has addressed the single-subject rule since the 1986 constitutional amendment. *See*, *e.g.*, *Hilco Elec. Co-Op., Inc. v. Midlothian Butane Gas Co., Inc.*, 111 S.W.3d 75, 82 (Tex. 2003); *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 971 S.W.2d 439, 441 (Tex. 1998).

Since the constitutional amendment, some Texas intermediate courts have interpreted *Robinson* as holding that, as part of the single-subject rule, a court should consider whether the provisions are not foreign to the subject expressed in the title. *Texas Alcoh. Bev. Comm'n v. Silver City Club*, 315 S.W.3d 643, 645–46, 648 (Tex. App.—Dallas 2010, pet. ref'd) (describing single-subject rule as including whether the provisions "are not foreign to the subject expressed in the title" and concluding that the provision "concerns the subject expressed in the title of House Bill 7"); *Garay v. State*, 940 S.W.2d 211, 215–16 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (in deciding whether the single-subject rule was violated, court considered single-subject rule as including whether the provisions "are not foreign to the subject expressed in the title" and that the provisions "relate directly to the general subject matter of the statute as expressed in the senate bill caption"); *Skillern v. State*,

---

[7] Similar to *Robinson*, before the constitutional amendment, this Court considered whether the subject was foreign to the subject expressed in the title. *See Paster v. State*, 701 S.W.2d 843, 847 (Tex. Crim. App. 1985) ("A statute will not be held unconstitutional where its provisions relate, directly or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title.").

890 S.W.2d 849, 862 (Tex. App.—Austin 1994, pet. ref'd) (considering that bill's provisions "are not foreign to the subject expressed in the title of the bill"). But this view misunderstands *Robinson*, a case in which the Texas Supreme Court was conducting a review for constitutional violations of both the caption requirement, which is no longer a matter for the judicial branch, and the single-subject requirement, which did not include an examination of whether the provisions were foreign to the subject expressed in the title. *Robinson*, 507 S.W.2d at 524–25.[8] That *Robinson* never intended for the title to be a requirement of the single-subject rule is made clear in the Texas Supreme Court's later decision in *LeCroy*, in which the Court addressed the caption requirement separately from the "unity of subject requirement," explaining that the latter test was satisfied "even if it contains numerous provisions, however diverse, as long as these provisions relate directly or indirectly to the same general subject and have a mutual connection." *See LeCroy*, 713 S.W.2d at 337.

Because of the constitutional amendment to Section 35, we now conclude that the

---

[8]      We agree with the court of appeals that *State Board of Insurance* is easily distinguished here. *See Ex parte Jones*, 410 S.W.3d 349, 353–54 (Tex. App.—Houston [14th Dist.] 2013) (op. on reh'g) (citing *State Bd. of Ins. v. Nat'l Emp. Benefit Adm'rs, Inc.*, 786 S.W.2d 106, 109 (Tex. App.—Austin 1990, no writ) ("not[ing] that the bill's title indicates that it regulates, and distinguishes between, 'third party administrators' and 'certain non-profit subscription programs'")). In *State Board of Insurance*, the Third Court of Appeals held that the single-subject rule was violated because three of the provisions addressed Insurance Code regulations for third-party administrators that were to take place at a later specified date, but a fourth provision in the bill amended the Emergency Medical Services Act to create a program to fund services provided by emergency-medical-services vehicles that would be effective immediately and that would be exempted from the Insurance Code. *State Bd. of Ins.* at 107–08. The Third Court of Appeals determined that, because the provisions did not apply to the same code and had different effective dates, they did not pertain to a single subject. *Id.* at 109–10. Here, the provisions all apply to the Texas Penal Code and have the same effective date.

matter of whether the provisions in the bill are foreign to the subject expressed in the title is a matter exclusively for the legislative branch, but that courts may consider the title for the limited purpose of any information that it may provide as to whether the bill contains a single subject. Here, the title of the bill, as written to conform to its substance as enacted, describes it as relating to a tire-deflation-device offense and evading-arrest-with-a-motor-vehicle offense and providing for criminal penalties. As enacted, Senate Bill 1416 in relevant part stated,

### AN ACT

relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire deflation device and to the offense of attempting to evade arrest through the use of a vehicle or a tire deflation device; providing criminal penalties.

Enrolled Version of Senate Bill 1416, available at http://www.capitol.state.tx.us/tlodocs/82R/billtext/pdf/SB01416F.pdf. Though the title listed several different criminal offenses and provided for criminal penalties, all of those matters are contained within the Texas Penal Code and are related to the crime of evading arrest. The title provides information supporting our view that this bill, which provides for criminal penalties for offenses related to motor vehicles to better protect law enforcement and the public from actors who evade arrest, does not violate the single-subject requirement. Although we disagree with the court of appeals's implicit suggestion that any reference to the bill's title is immaterial, we agree with its determination that a bill should not be invalidated for title deficiencies and its ultimate conclusion that the bill here had a single

subject.  *See Jones*, 410 S.W.3d at 353 (distinguishing *White v. State*, 440 S.W.2d 660 (Tex. Crim. App. 1969) because that decision "was based on the title-sufficiency rule").

Appellant argues that we should adopt Oklahoma's "germaneness" test that asks "if the provisions are germane, relative, and cognate to a readily apparent common theme and purpose." *Fent v. State ex. rel. Oklahoma Capitol Improvement Auth.*, 214 P.3d 799, 805 (Okla. 2009).  Oklahoma's constitution requires that a title be clearly expressed.  *See* OKLA. CONST. art. V, § 57 (West 2013) ("Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title[.]").  Because Texas's Constitution now prohibits the voiding of an act based on a deficient title, we decline to adopt the "germaneness" test that focuses on the title.  Rather, in accordance with the Texas constitutional prohibition against judicial invalidation of a bill for title deficiencies, we consider the title only for limited informational purposes in deciphering a bill's subject or subjects.  We, therefore, decline to adopt appellant's proposed test.

### III.  Conclusion

We hold that Senate Bill 1416 does not unconstitutionally violate the single-subject rule for acts by the Legislature.  We affirm the judgment of the court of appeals.

Delivered: June 4, 2014

Publish