

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00906-CR

Luis **FRANCO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CR-3379
Honorable Dick Alcala, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  June 10, 2015

AFFIRMED AS REFORMED

Appellant Luis Franco was convicted by a jury of evading arrest or detention with a vehicle

and the jury assessed punishment at three years' confinement in the Institutional Division of the

Texas Department of Criminal Justice. On appeal, Franco contends the evidence is insufficient to

support his conviction and that the trial court erred in assessing attorney's fees as court costs. We

reform the trial court's judgment to delete the imposition of attorney's fees and affirm the judgment

as reformed.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 26, 2012, two San Antonio police officers initiated a traffic stop after witnessing Franco change lanes without signaling. How far Franco traveled prior to stopping his vehicle, and whether Franco ran from the vehicle and resisted arrest, were highly contested issues at trial. The officers reported that after the patrol vehicle's emergency lights were activated, Franco slightly accelerated his speed and failed to pull his vehicle to the side of the road. The officers responded by utilizing the vehicle's siren, horn, and spotlight to illuminate the interior of the vehicle. Franco, however, never indicated his intent to stop the vehicle. After passing several locations that the officers considered safe places to stop, Franco finally pulled into his driveway in the 200 block of Dashiell. The officers testified that Franco immediately ran from the vehicle and resisted their attempts to detain him.

Franco's passenger, however, told a very different story. She relayed that Franco pulled into the first safe location and that he waited in the vehicle until the officers "yanked" Franco from the front seat.

The jury ultimately returned a verdict of guilty and assessed punishment at three years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Franco raises two issues on appeal: (1) the evidence is insufficient to support his conviction, and (2) the trial court erred in assessing attorney's fees as court costs.

We turn first to Franco's sufficiency of the evidence issue.

**EVADING ARREST OR DETENTION WITH A VEHICLE**

**A.      Arguments of the Parties**

Franco argues that he stopped his vehicle in the first place that was safe for him to do so—his driveway. Franco contends that when the officer activated his emergency lights, Franco decreased his speed and attempted to find a safe place to stop. His asserts that his driveway, and

ultimate stopping location, was three blocks from the original location where the officer activated his lights.  Accordingly, Franco alleges the evidence is insufficient to support the State's allegation that he attempted to flee.

The State counters the evidence supports that Franco did not promptly stop after the officers signaled for him to pull over.  To the contrary, the record substantiates Franco intentionally evaded the officers' vehicle and drove to his residence so that he could avoid the vehicle being impounded.

## B.    Standard of Review

When reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."  *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We defer to the jury's assessment of the credibility of the witnesses "and the weight to be given their testimony," *Brooks*, 323 S.W.3d at 899, and allow for reasonable inferences from the evidence presented.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law); *Jackson*, 443 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Williams*, 235 S.W.3d at 750.  This legal sufficiency standard applies equally to both direct and

circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper*, 214 S.W.3d at 13; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

## C.     Evading Arrest

Texas Penal Code section 38.04(a) provides that a person commits the offense of evading arrest or detention while using a vehicle if (1) "he intentionally flees" (2) "from a person he knows is a peace officer" (3) who is "attempting to lawfully arrest or detain him" and the offense is enhanced to a third degree felony if "the actor uses a vehicle while the actor is in flight."  TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West Supp. 2014); *see Ex parte Jones*, 440 S.W.3d 628, 629–31 (Tex. Crim. App. 2014) (reciting the legislative history of section 38.04); *Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd); *Lopez v. State*, 415 S.W.3d 495, 496–97 (Tex. App.—San Antonio 2013, no pet.).  "The relevant inquiry is whether there was an attempt to flee or delay the detention.  The length and speed of the chase are factors in considering whether there was an attempt to escape, but are not determinative by themselves."  *Baines*, 418 S.W.3d at 670.  Importantly, as the *Mayfield* Court explained, "fleeing slowly is still fleeing." *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.).

## D.     Testimony at Trial

Because Franco contends the evidence is insufficient to support his conviction, we provide a more in-depth discussion of the testimony before the jury.

### 1.     Officer Chad Wedeking

Officer Chad Wedeking was the first witness called by the State.  On December 26, 2012, Officer Wedeking was traveling in the passenger seat of a marked patrol car being driven by his partner, Officer Jonathan Hoggard.  At approximately 8:20 p.m., Officer Wedeking observed a Chevy Suburban make a lane change from the inside lane to the outside lane without using a turn signal.  Officer Hoggard activated the overhead emergency lights and the siren.  Officer Wedeking

testified that the vehicle did not stop, but actually "slightly accelerated." In response, Officer Wedeking activated the emergency air horn and Officer Hoggard turned on the spotlight allowing the officers to "see what's going on inside the [defendant's] vehicle." Officer Wedeking described seeing Franco look into his rearview mirror, appeared to acknowledge the officers, and then continued driving.

Irrespective of the officers' actions, Franco continued to travel down South Hackberry and passed at least three side streets before turning right on Dashiell. According to Officer Wedeking, after approximately six blocks, Franco pulled into a driveway in the 200 block of Dashiell and "as soon as the vehicle came to a stop the driver's side door came open and he was out." After seeing Franco resist Officer Hoggard's attempts to detain him, Officer Wedeking moved to assist Officer Hoggard. Once Franco was under control and seated on the curb, he apologized to the officers explaining, "Sorry, sorry, I just didn't want my vehicle to be towed because I was driving on a suspended license."

During cross-examination, Officer Wedeking conceded that his report did not indicate that Franco sped up after the emergency lights were activated. Officer Wedeking also acknowledged that Franco was within five miles of the posted speed limit at all times. When defense counsel questioned Officer Wedeking about Franco's attempt to pull over in a safe place, Officer Wedeking explained that Franco never gave any indication that he was intending to pull over—he did not slow down, use his blinker, initiate his hazard lights, or use a hand signal.

2. *Officer Jonathan Hoggard*

Officer Hoggard was the State's only other witness. Officer Hoggard testified that he initiated a traffic stop after Franco failed to signal when changing lanes of traffic. According to Officer Hoggard, when he initiated the overhead emergency lights, Franco "accelerated slightly and began to travel southbound on Hackberry." After activating the siren, the horn, and the

spotlight, Officer Hoggard described Franco looking in his rearview mirror and side-view mirror and seeing the officers but apparently refusing to pull over despite passing several well-lit, safe areas.

Franco ultimately pulled into the driveway of his residence traveling "faster than you normally pull in." Officer Hoggard described Franco slamming on the brakes and the driver door flying open. Officer Hoggard was able to cut Franco off as he tried to "round his door towards the house." As Officer Hoggard tried to gain control of the suspect, Franco continued to "pull away" in a combative and resisting manner. Officer Hoggard further testified that Franco kept saying "I'm sorry, I'm sorry, sir, I just wanted to get home. I'm sorry, sir. I didn't want to get my vehicle towed. I'm on a suspended license or my driver's license is invalid right now."

### 3. Aarti Desai

The only witness called by the defense was Aarti Desai, Franco's girlfriend and the passenger in the front seat of Franco's vehicle. Desai authenticated several photographs of the streets and route driven by Franco and the officers on the night in question. Desai testified that she did not realize the officers were following their vehicle until the emergency lights were activated. She further disagreed with the location identified by the officers as to where the stop was initiated. Moreover, in direct contradiction to the officers' testimony, Desai was adamant that when the lights were activated, Franco decreased his speed. Desai did not recall any sirens or the officers shining a spotlight into their vehicle.

When asked about what transpired when Franco stopped his vehicle in the driveway, Desai resolutely asserted that Franco "parked the truck and sat there." He did not attempt to leave the vehicle prior to "the officer yank[ing] him out."

On cross-examination, Desai was unyielding in her claims there was no safe place for Franco to pull over prior to the driveway on Dashiell.

There's no median, there's no shoulder to pull over or—if we pull over on Hackberry, there's cars that pass through so you—if the officer would have went to—if we pulled over on Hackberry and the officer would have got out of the car there would have been traffic coming. There's no shoulder, there's no median to pull over.

. . . .

When you turn on Dashiell there's cars parked all on the side. There's no— some houses don't even have driveways to park their cars. Some do. So the safest and the best place to park was at our house and just park in the driveway.

Desai maintained that it was the day after Christmas, the streets were full, and their driveway was the best place to park. She was also insistent that Franco sat in the vehicle until the officers "yanked" him out.

### E.    Analysis

The jury was presented with directly conflicting testimony—the officers' version of events versus Desai's. The jury could reasonably infer that Franco was aware the officers were attempting to detain him but that he intended to flee to the driveway of this house. *See Lopez*, 415 S.W.3d at 497. Based on their verdict, the jury clearly chose to believe the officers' testimony over Desai's.

We must defer to the jury's assessment of the credibility of the witnesses, *Brooks*, 323 S.W.3d at 899, and their resolution of conflicts in the testimony, *Jackson*, 443 U.S. at 319. After viewing all the evidence in the light most favorable to the verdict, we conclude the record contains sufficient evidence to support the jury's verdict. Accordingly, we overrule Franco's first issue.

ENHANCEMENT PARAGRAPH

### A.    Arguments of the Parties

Franco also contends the State failed to introduce his prior conviction during the guilt-innocence phase of the trial and, thus, the jury was not asked to make a finding on the previous conviction. Without proof, the jury could not find Franco guilty of the third degree evading

arrest—repeater and thus, Franco contends the judgment should be reformed to reflect a conviction for state jail felony evading arrest.

**B.     Texas Penal Code Section 38.04(b)(2)(A)**

Franco relies on *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005), for the proposition that "[t]he plain language of § 38.04 reveals that a prior conviction for evading arrest is an element of the offense of third-degree evading arrest. It, therefore, must be proved at the guilt phase of trial." Section 38.04(b)(2)(A), however, was amended after the Court of Criminal Appeals' decision in *Calton*. *See* Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 3, sec. 38.04(b), 2011 Tex. Gen. Laws 2321, 2322. The use of a vehicle now elevates evading arrest to a third-degree felony, without the added requirement of proof of a prior conviction, thus Franco was properly charged with a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A); *accord Jenkins v. State*, 454 S.W.3d 712, 713, 715 (Tex. App.—Corpus Christi 2015, no pet.) (citing *Ex parte Jones*, 440 S.W.3d 628, 629 (Tex. Crim. App. 2014)); *Garrett v. State*, No. 05-13-01480-CR, 2014 WL 7476409, at *1, (Tex. App.—Dallas Dec. 31, 2014, no pet.) (mem. op., not designated for publication); *Thomas v. State*, No. 06-14-00002-CR, 2014 WL 7140235, at *1 (Tex. App.—Texarkana Dec. 16, 2014, pet. ref'd) (mem. op., not designated for publication); *State v. Sneed*, No. 09-14-0232-CR, 2014 WL 4755502, at *3, (Tex. App.—Beaumont Sept. 24, 2014, pet. ref'd) (mem. op., not designated for publication). Because the State was not required to introduce Franco's prior conviction during the guilt-innocence phase of the trial, the evidence supports his third-degree felony conviction.

**ATTORNEY'S FEES**

Franco contends the record fails to establish his ability to pay attorney's fees as part of the court costs. The State agrees that Franco's indigent status precluded the assessment of attorney's fees as court costs. We, therefore, sustain this issue.

We reform the judgment and the bill of costs to delete the assessment of the attorney's fees against Franco and affirm the judgment as reformed. *See Solomon v. State*, 392 S.W.3d 309, 311 (Tex. App.—San Antonio 2012, no pet.) (op. on reh'g).

Patricia O. Alvarez, Justice

DO NOT PUBLISH