# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00302-CR

**Joseph Neil De La Garza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2019-402, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Joseph Neil de la Garza appeals his evading arrest with a motor vehicle conviction, raising a single issue—that the trial court reversibly erred in refusing to charge the jury on the defense of necessity. We affirm.

## BACKGROUND

On December 13, 2017, Officer Cody Bianchi, a K-9 officer with the New Braunfels Police Department, was on duty when he received a dispatch call regarding a theft of "prescription pills from a Walgreens" located in New Braunfels. The suspect was identified as Joseph de la Garza, based on an expired driver's license he provided during the incident. Although the license had a Seguin address, dispatch had a local New Braunfels address for him. Officer Bianchi, along with Officer Derek Woelfel, responded to that address to verify De la Garza's presence, to "make sure he was the one that was actually there. It was not somebody else trying

to pass off his information as their own, or that it might have just been a misunderstanding." Upon arrival, Officer Bianchi stood to the side of the door and reached over to knock on the door several times but got no response; Officer Woelfel went around to the side of the house because boys playing basketball next door had told him that De la Garza sometimes pulls in on the side of the yard through a gate and enters the house through the back. A few minutes later, the officers observed a silver Audi approach the house, and the driver, later identified as De la Garza, honked his horn and yelled out the window towards Officer Bianchi, "Hey guy. It's me you're looking for." And "I'm not going to shoot you," which Officer Bianchi figured meant, "[t]hat he was probably going to shoot me."

Officer Bianchi instructed De la Garza to stick his hands out of the door, but De la Garza did not comply and instead kept his car in drive and kept "creeping forward, stopping, creeping forward, stopping" and said something like, "I would rather not be arrested because I just had a tooth removed." Despite being told three times not to leave and to stop, De la Garza said he was going to Huisache Grill—a restaurant Officer Bianchi knew to be downtown—and drove off in his Audi before Officer Bianchi could enter his patrol vehicle. Officer Woelfel, meanwhile, sprinted to his patrol vehicle to pursue him, both for possible theft and for driving with an expired license. During the pursuit, De la Garza drove on multiple streets, at speeds double the posted limits, and committed several traffic violations, such as failing to signal and running stop signs. He also bypassed several safe locations to stop, such as the railroad museum parking lot, which was well lit.

De la Garza initially passed up Huisache Grill by one block and then drove the wrong way down a one-way street to get back to it. The pursuit ended there, where De la Garza was stopped and arrested for "evading with a vehicle, at a minimum."

2

During the search of De la Garza's vehicle incident to arrest, officers found the prescription medication reported stolen from Walgreens; there "was no receipt that was stapled on it" to indicate lawful purchase. They also found a "legal" rifle lying on the back seat.

Officer Phillip Garcia, meanwhile, had spoken to the employees at Walgreens, who said De la Garza had thrown $20 at the register. Garcia did not consider it a completed transaction because "throwing money is not paying."

A grand jury indicted De la Garza for evading arrest with a vehicle in two paragraphs, the first alleging he intentionally fled "from Officer Cody Bianchi" and the second from "Officer Derek Woelfel," each "a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain him."

At trial, all three officers testified. Officers Bianchi and Woelfel testified that, at the time of the pursuit, they did not know that De la Garza had left $20 to pay for the prescription. Officer Bianchi testified that if he had known that before he got to De la Garza's home, "It wouldn't have changed how I proceeded, but it probably would have changed the action I would have taken." On cross-examination, jurors learned that although De la Garza had been charged with theft, the charge was dismissed because De la Garza had paid for the items. The jury was shown body cam and dash cam videos capturing Officer Bianchi's arrival and knocking at the door and interaction with De la Garza, Officer Woelfel's chase, and De la Garza's arrest.

De la Garza testified in his own defense that after he was told by Walgreens that his license was expired, he placed, not threw, the $20 on the counter and picked up the prescription bag. He had picked up a prescription from the same Walgreens the week before without incident. He needed the medication because he had a tooth extracted that same afternoon and was in pain. As he walked out the manager followed him; the store alarm had been engaged. He told the

3

manager he had paid. The manager told him he was "going to call the cops," and De la Garza responded, "Well, I can't stop you." De la Garza got in his car and left. He stopped by Huisache Grill for a few minutes to see his wife, who worked there, and then drove home. He saw two patrol SUVs at his house.

He could see Officer Bianchi but not a second officer and was concerned because his son was home alone: "I honked my horn to get the attention of the officer on the front porch, to call him over, tried to explain to him that I had paid for the items" and "that I didn't feel comfortable having that encounter right there because it was so dark and my son was there and I didn't know where the other officer was." He was not sure Officer Bianchi heard everything he said because he had gauze in his mouth. De la Garza acknowledged driving with an expired license and admitted to driving recklessly during the incident. He expressed regret about his driving but testified he was scared about the armed officers at his house and noted that he told the officer where he was going, and he went there. He expressed that he did not believe he had committed theft, as he had left money for the prescription at Walgreens. He also stated that the reason he told Officer Bianchi he was not going to shoot him was because the officer "was shining a flashlight in my eyes, and I didn't know if he had his gun pointed at me or not."

On cross-examination he admitted that he knew the officers were looking to talk to him about what had happened at Walgreens. But "I didn't believe I had stolen anything, so I believe there was no right to stop me for theft." And "I did not know that they were trying to detain me. I thought we were just going to talk about it, and that's why I thought that we were free to go to a different location and talk about it. I needed to get the car to my wife, because it was a freezing night in December." He agreed, in hindsight, that the officers had the right to stop him

4

"for driving with an expired license." At the time he did not know that the officers had that information.

At the jury charge conference, De La Garza requested a jury instruction on necessity: "Judge, again, the facts, as known to the Defendant in this case, were: armed officers coming out of his backyard. Knowing his 12-year-old is at home, he wanted to go somewhere else. He did not want the incident to take place at his home." The trial court refused the requested charge. The application charge instructed the jury to find De la Garza guilty if it found, beyond a reasonable doubt, that he did "intentionally flee from Officer Cody Bianchi or Derek Woelfel," a person he "knew to be a peace officer attempting to lawfully arrest or detain him," and he "used a vehicle while he was in flight."

The jury found De la Garza guilty and assessed punishment at three years' confinement, recommending it be probated for three years. The trial court suspended De la Garza's sentence and placed him on community supervision for three years.

## ANALYSIS

### Failure to Instruct the Jury on the Defense of Necessity

*Applicable Standard of Review*

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case[.]" *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007) (quoting Tex. Code Crim. Proc. art. 36.14). "This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Id*. at 208-09.

The defense of necessity allows an actor to escape criminal responsibility when violating the law is necessary to avoid a greater evil. *Wilson v. State*, 777 S.W.2d 823, 824 (Tex. App.—Austin 1989), *aff'd*, 853 S.W.2d 547 (Tex. Crim. App. 1993). The statutory defense of necessity provides that, "Conduct is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear." Tex. Penal Code § 9.22.

"Necessity is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct." *Maciel v. State*, 631 S.W.3d 720, 723 (Tex. Crim. App. 2021); *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010). "To be entitled to a defensive instruction for necessity, a defendant must put on evidence that 'essentially admits to every element of the offense, including the culpable mental state.'" *Maciel*, 631 S.W.3d at 723 (quoting *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007)). "In other words, a defendant cannot both invoke necessity and flatly deny the charged conduct." *Id*. Nevertheless, a "defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013). "A defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Maciel*, 631 S.W.3d at 723. "In determining whether a defense is thus supported by the evidence, the court views the evidence in the light most favorable to the defendant's requested jury instruction, and relies 'on its own judgment, formed in the light of its own common sense and

experience, as to the limits of rational inference from the facts proven.'" *Id*. (quoting *Shaw*, 243 S.W.3d at 658).

Appellate courts "do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction[.]" *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Id*. "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw*, 243 S.W.3d at 658. If we find the trial court erred by failing to give a requested instruction, we analyze that error for "some harm." *Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005).

*Application*

A person commits an offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex. Penal Code § 38.04(a). The offense is a third-degree felony if, as here, "the actor uses a vehicle while the actor is in flight." *Id.* § 38.04(b)(2)(A). We cannot glean from the face of section 38.04 any clear legislative purpose indicating that the necessity defense is not available. *See Bowen v. State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005) (holding defense of necessity available in prosecution for resisting arrest and noting "section 9.22's plain language indicates that the defense of necessity may be applicable in every case unless specifically excluded by the legislature"). Therefore, De la Garza's entitlement to the instruction turns on whether his defensive evidence—viewed in the light most favorable to the requested instruction— essentially admits to every element of the offense including the culpable mental state and supports

7

a rational inference that each element of the defense is true."[1]  *Maciel*, 631 S.W.3d at 723; *Shaw*, 243 S.W.3d at 659.

### (1) Confession

De la Garza argues he satisfied the confession element.  We agree.  De la Garza testified that he was the driver of the silver Audi, and he committed the traffic violations—speeding, driving recklessly, ignoring stop signs, driving the wrong way on a one-way street—despite Officers Bianchi and Derek Woelfel trying to detain him.  He admitted (1) he (2) intentionally fled in his Audi (3) from Cody Bianchi and Derek Woelfel (4) with knowledge that they were peace officers (5) with knowledge they were attempting to arrest or detain him, and (6) the attempted arrest or detention was lawful.  *See Nicholson v. State*, 682 S.W.3d 238, 245 (Tex. Crim. App. 2024).

The State argues he did not admit this last element in that: he testified that the officers had no right to stop him for the theft because he had not committed theft, he testified that driving with an expired license was no reason for the officers to stop him, and he filed an affidavit with the trial court stating that he had no knowledge that the officers were attempting to detain him.  But an admission does not need to be explicit.  *Maciel*, 631 S.W.3d at 725.

---

[1] The State argues that the defense of necessity is inapplicable here because De la Garza "provoked the difficulty" by his actions at Walgreens.  But for those actions, the police would not have been at his home, and he would have had no occasion to flee the attempted arrest or detention.  *See Navarro v. State*, 649 S.W.3d 603, 617 (Tex. App.—Houston [1st Dist.] 2022, pet. granted) (appellant not entitled to necessity instruction though he admitted he had committed assault offense for which he was on trial because he provoked difficulty by resisting detention).  Because the Court of Criminal Appeals has granted review of that case to address whether the necessity defense can apply to a defendant who provokes the difficulty, we decline to apply that doctrine here.

And in this context, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin*, 207 S.W.3d at 782. De la Garza was entitled to a necessity instruction even if the evidence raising the issue was contradicted. *Celis*, 416 S.W.3d at 430. As De la Garza points out, he repeatedly testified that he recognized "in hindsight" that the officers were fully within their right to stop him for driving without a license. He did not need to further admit that he knew at the time of the attempted detention that the attempted detention was legal. *See Nicholson*, 682 S.W.3d at 245 (construing "Texas Penal Code § 38.04(a) to not require the mens rea to be applied to the lawfulness of the detention or arrest"). Having determined that De la Garza adequately admitted to the required conduct and mens rea elements of the evading arrest or detention offense, we turn to whether there was some evidence, from any source, on each element of the defense, that, if believed by the jury, would support a rational inference that each element is true. *Maciel*, 631 S.W.3d at 723; *Shaw*, 243 S.W.3d at 659.

Again, in this case, those elements are (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm, and (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. *See* Tex. Penal Code § 9.22.

### (2) Avoidance

De la Garza argues that his own testimony, if believed by the jury, would support a rational inference that the elements of the defense were true because his actions were "necessary" to "secure his son from any armed action by the police" and to "provide his wife the family car on a freezing night" and his actions were "relatively harmless," presumably because he told the officer where he was going and why, and he went straight there.

9

*(a) Whether the evidence supports a rational inference that "the actor reasonably believes the conduct is immediately necessary to avoid imminent harm"*

We agree that the evidence in the record rationally supports, albeit weakly, an inference that De la Garza reasonably believed that driving away from the officers to pull the officers away from his home was immediately necessary to avoid imminent harm as to his son. De la Garza testified that when he drove up he saw "two police SUVs outside of [his] home." "There was a police officer standing on the front porch, leaning against the front wall. Looked like he had his hand on either his pistol, or his pistol was out and he was holding it against his body, one of the two. He was 30 feet away." De la Garza testified he was concerned because his son was at the home alone, it was dark, and he could only see one of the officers. But we question whether the evidence supports any inference that De la Garza reasonably believed that continuing to evade arrest or detention, all the way to Huisache Grill—after he had drawn the officers away from his son—was immediately necessary to avoid imminent harm as to his son or wife.

De la Garza testified that he needed to get the car to his wife because it was a freezing night in December. Even so, that need could not have been immediate. "Imminent" means "something that is immediate, something that is going to happen now." *Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd). And, as the State notes, Garza, by his own words, had just left Huisache Grill and did not pick his wife up or leave her the vehicle at that time. Therefore, any possible justification for his evading conduct evaporated after he had drawn the officers away from his son. There was no longer any imminent harm De la Garza sought to prevent. *See Texas Dep't of Pub. Safety v. Moore*, 175 S.W.3d 270, 274 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (when criminal conduct is no longer necessary to avoid imminent harm, necessity defense evaporates).

10

Even if the evidence raised a rational inference that the first element of the necessity offense were true, though, it did not do the same for the second element.

*(b) Whether the evidence supports a rational inference that "the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct"*

Section 38.04 "was intended to better protect law enforcement and the public from actors who evade arrest," *Ex parte Jones*, 440 S.W.3d 628, 632 (Tex. Crim. App. 2014), and "to deter flight from arrest by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects." *Nicholson*, 682 S.W.3d at 244 (quoting *Alejos v. State*, 555 S.W.2d 444, 448 (Tex. Crim. App. 1977)). Here, Officer Bianchi's dash cam showed that De la Garza drove recklessly, speeding down a residential street, failing to stop at multiple stop signs, speeding downtown with other cars and pedestrians around, and driving the wrong way on a one-way street. That is, De la Garza drove his Audi dangerously to evade arrest or detention. By ordinary standards of reasonableness, as the extreme circumstances warranting evasion waned, De la Garza's actions increasingly subjected law enforcement and the public to danger—the very harm sought to be prevented by the law proscribing the conduct. *See Ex parte Jones*, 440 S.W.3d at 632; *Nicholson*, 682 S.W.3d at 244. No evidence supported a rational inference that, through the lens of the ordinary standards of reasonableness, the desirability and urgency of avoiding any injury to his son or wife clearly outweighed the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. His actions were relatively harmful, rather than, as De la Garza argues, "relatively harmless."

11

## CONCLUSION

De la Garza presented evidence that admitted to every element of the offense, including the culpable mental state. *Maciel*, 631 S.W.3d at 723; *Shaw*, 243 S.W.3d at 659. But because the evidence, viewed in the light most favorable to the requested instruction, did not support a rational inference that both elements of the defense were true, the trial court did not err to refuse to give the necessity instruction. *Maciel*, 631 S.W.3d at 723. We overrule De la Garza's sole issue on appeal and affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly and Crump

Affirmed

Filed: May 8, 2025

Do Not Publish

12